IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALYSON E. RIOS,                               :

    Plaintiff,                                 :

vs.                                                       :        CA 15-0504-C

CAROLYN W. COLVIN,                       :
Acting Commissioner of Social Security,
                                                    :

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 18 & 20 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the August 18, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 18 & 20 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of
(Continued)

Plaintiff alleges disability due to intermittent explosive disorder and cognitive disorder secondary to organic brain disease. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.**
>
> **2. The claimant has not engaged in substantial gainful activity since April 3, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> . . .
>
> **3. The claimant has the following severe impairments: intermittent explosive disorder and cognitive disorder (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple tasks; and short, simple instructions. Further, the claimant can occasionally have casual contact with coworkers and supervisors. In addition, the claimant reported she could occasionally respond appropriately to co-workers and the public.**
>
> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant is a 36-year-old woman, with a 12th grade education, who alleges disability due to the above-listed impairments. At the hearing, the claimant testified that she lives in a trailer with her two daughters, ages 7 and 9. Further, the claimant testified that her parents pay her bills. As to her explosive disorder, the claimant testified that she sustained a severe head injury []; this condition makes it impossible for her to keep a job; and she is not on medication and she is not receiving therapy or treatment. Further, the claimant testified that, when she was on her medication, people could not tell she had any problems. The claimant testified that she has issues with getting along with coworkers[, and] she loses her temper quickly[.] As to her functional limitations, the claimant testified she can sit, walk, and stand; her ability to lift and carry is affected by her lower back pain; and she could stoop, bend, climb stairs, and grip. In addition, the claimant testified that she could take care of her personal care; she could do housework; and she visits with family twice a week. As to the claimant's activities of daily living, the claimant reported she gets her kids ready for school[,] and she does chores.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

Overall, while the record supports some level of functional limitation as a result of her impairments, it does not support such significant limitations as alleged by the claimant. The undersigned specifically considered the effects of the claimant's impairments, both separately and in combination,

and found that the record only supports functional limitations to a degree that is consistent with the above residual functional capacity. Further, the undersigned has specifically tailored the residual functional capacity above to take into account all of the claimant's functional limitations for which there was support in the record.

In terms of the claimant's mental impairments, while she does suffer from intermittent explosive disorder and cognitive disorder, which are severe impairments, the record does not support such severe functional limitations as alleged by the claimant. The record shows the claimant was diagnosed with these conditions. However, the record shows the claimant has not received any treatment; she has been noncompliant with medications; and she has not had any inpatient psychiatric hospitalizations.

During a remote neuropsychological evaluation on February 17, 2003 with Dr. Melissa Ogden, it was noted that the claimant sustained a traumatic brain injury in a motor vehicle accident when she was 18 months old. . . . The diagnostic impression was late effects of intracranial injury. Dr. Ogden opined the claimant's difficulties with executive functions and social interactions were likely to pose the greatest obstacles to her ability to obtain and maintain an employment position. Further, Dr. Ogden opined the claimant's independent thinking skills were quite limited and she should not be placed in a job that required her to make decisions independently. Dr. Ogden opined the claimant would need a great deal of structure and supervision on a job site in order to help her overcome her problems with executive functions; and her attention and concentration were areas of relative strength and she appeared able to maintain an extended period of focus without difficulty. Dr. Ogden noted the claimant's ability to learn and remember new information was an area of relative strength; and while she is able to learn and retain new information, she would have difficult[y] applying it flexibly across situations. Dr. Ogden opined the claimant might be at somewhat of a disadvantage in job settings that had strict deadlines or time pressures.

During an initial assessment on March 17, 2004, the claimant complained that she has a bad attitude. Specifically, the claimant described a recent incident at work in which the claimant became irritated with the assistant manager and reported confronting her. The claimant's mother reported the claimant had a long history of exploding. Further, the claimant attributed some of her difficulties at work to problems at home between her boyfriend and another woman that he was seeing. On the Shedler QPD, it was noted that the claimant had mildly elevated symptom scores on depression, anxiety, and obsessive-compulsive disorder. However, the claimant denied chronic problems with sleep, energy, or concentration. As to the claimant's psychiatric history, it was noted that the claimant had mental health treatment through the years. The claimant was diagnosed with intermittent explosive disorder[,] and cognitive disorder, secondary to a closed head injury.

4

During a mental examination on August 18, 2008 with Dr. Lucile Williams, the claimant reported she was unable to work due to intermittent explosive disorder. However, it was further noted that the claimant had no history of psychiatric hospitalization; she was not [being] treated by a physician; and she was not on any medication. A mental status examination revealed the claimant's concentration, immediate memory, recent memory, and remote memory were normal. This supports the [determination that] claimant has the capacity to perform unskilled work. As to her daily activities, the claimant reported she could go to the store, cook, do laundry, play with the kids, watch television, listen to music, clean the house, play games on the computer, and play video games. These activities are inconsistent with the claimant's allegations of inability to pay attention for long periods. Dr. Williams opined the claimant would likely have favorable response to treatment, including psychotherapy, within the next six to twelve months.

During a neurological evaluation on November 11, 2008, it was noted that the claimant was referred by Ms. Lisa Jones with the Mobile County Department of Human Resources. Specifically, Ms. Jones needed to know if the claimant's failure to protect her children, poor decisions, and inability to retain employment was due to her mental capabilities or poor decision-making skills. As to the claimant's activities of daily living, the claimant reported she could complete all personal and simple domestic activities of daily living independently. Further, the claimant reported she could cook and do the laundry; she could drive; and she could count money and shop independently. A mental status examination revealed the claimant was properly oriented; her mood and affect were appropriate; she did not appear anxious; and she described her usual mood as depressed. It was noted that the claimant did not appear highly motivated. However, the claimant did not appear to have trouble concentrating[] and her effort and persistence seemed adequate for testing purposes. The claimant appeared to have cognitive deficits, which limit her ability to parent effectively and minimize her ability to perceive threatening and dangerous situations accurately. However, Dr. Jack Carney opined the claimant's cognitive deficits should not necessarily limit her ability to maintain employment. Further, Dr. Carney opined that, while the claimant may appear socially awkward, given her inability to read social situations accurately, her overall cognitive functions to attend to task, remember her duties, and articulate were intact. In addition, Dr. Carney opined the claimant needed a work environment that was highly structured, minimally demanding, and required minimal interaction with the public. The claimant was diagnosed with cognitive disorder.

The record shows the claimant did not have any office visits until January 13, 2011, when she presented for a consultative examination with Dr. Kenneth Starkey. During this visit, the claimant reported her problems were getting along with people and anger problems. It was noted that the claimant could feed, bathe, groom, and dress herself without assistance;

she could prepare simple meals; she could shop for small items; and she could use a phone and drive without assistance. Further, the claimant reported she worked full-time as a cashier/cook for a fast food restaurant from 2008 until April 2010 until she quit because "it was Easter weekend" and she wanted to stay home with her girls. This is inconsistent with the claimant's testimony that she could not maintain employment because of her impairments. A mental status examination revealed the claimant was able to focus and sustain attention with no significant distraction from extraneous stimuli. Further, the claimant's thinking was rational, but there was evidence of at least mild deficits for reasoning and judgment; and intellectual functioning was estimated to be in the low average to borderline range of functioning. The claimant's ability to focus and sustain attention and for immediate memory appeared adequate. In addition, the claimant's mood was euthymic; her affect was congruent with mood; and her insight and judgment appeared somewhat limited. As to the claimant's daily activities, she reported she got her children up and took them to school and daycare after feeding them; she sometimes washed dishes and clothes; and she cooked sometimes. Further, the claimant reported she liked to get on the computer and visit with friends; and she sometimes went to the grocery store, post office, or McDonalds. These extensive activities are inconsistent with the claimant's allegations of severe functional limitations. The claimant was diagnosed with cognitive disorder. Dr. Starkey opined the claimant's ability to understand, remember, and carry out simple/concrete instructions appeared adequate, although she would likely have difficulty with more complex instructions or with those requiring other than basic literacy skills. Further, the claimant's ability to work independently appeared marginal; her ability to work with supervisors, co-workers, and the general public appeared marginal; and her ability to work with pressures common to most everyday work settings appeared marginal.

A mental status examination with Dr. Thomas Bennett [on January 30, 2013] revealed the claimant's mood was average and she demonstrated a normal range of affect. The claimant's concentration and attention appeared to be slightly below average; and her short-term and long-term memories appeared to be average. The claimant's social judgment was mildly impaired; her judgment for interacting with family members was impaired; and she had no plans for future employment. In addition, the claimant's insight about her difficulties and what could be done about them was poor. The claimant was diagnosed with cognitive disorder due to head trauma by history. As to her prognosis, Dr. Bennett opined the claimant could probably make significant improvement with appropriate mental health intervention. Dr. Bennett opined the claimant's ability to relate to others was mildly impaired; her ability to function independently was slightly below average, but not impaired; and her ability to understand and carry out instructions was slightly below average, but not impaired. Dr. Bennett opined the claimant's ability to respond appropriately to supervisors and coworkers was mildly impaired[] and

she would probably respond to work pressures with some inappropriate behavior unless she had some assistance in developing better skills.

The claimant's activities of daily living are inconsistent with her allegations of such significant functional limitations, but are fully consistent with the residual functional capacity described above. The evidence of record indicates that, despite the claimant's complaints and allegations, she has admitted that she was able to perform her own personal care, drive, and talk on the phone. Further, the claimant reported she could cook and do laundry, and she could shop independently. In addition, the claimant reported she could play with her kids, watch television, listen to music, play games on the computer, and play video games. Furthermore, the claimant reported she could care for her children and take them to school; she visits with friends; and she goes to the grocery store, post office, and McDonalds sometimes. These activities, when viewed in conjunction with the other inconsistencies regarding the claimant's allegations of pain and dysfunction, further limit the claimant's credibility in discussing her pain. Of note, her description of her daily activities is representative of a fairly active and varied lifestyle and is not indicative of a significant restriction of activities or constriction of interests.

Also of note, there is an inconsistency between the claimant's testimony and the record. Specifically, at the hearing, the claimant testified that her impairments made it impossible for her to keep a job. However, during an examination on January 13, 2011, the claimant reported she work full-time as a cashier/cook from 2008 through April 2010, but quit because it was Easter weekend and she wanted to stay home with her children. While this inconsistency may not have been the product of a conscious attempt to mislead on the part of the claimant, it nonetheless negatively affects her credibility in discussing her activities of daily living and functional limitations.

In summary, based on the totality of the evidence as comprehensively discussed above, the undersigned finds the claimant only partially credible regarding the nature and extent of her functional limitations. The undersigned also finds considerable medical evidence to conclude that the claimant's impairments do not prevent the performance of substantial gainful activity within the assessed residual functional capacity. Total disability from all work activity is not established in this case.

The evidence in this case also contains medical opinions regarding the claimant's physical and mental functional capabilities. All medical opinions are evaluated under 20 CFR 404.1527/20 CFR 416.927. The factors considered are: 1) examining relationship; 2) treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors. Opinions on issues reserved to the Commissioner are opinions on the ultimate issue of disability, opinions as to whether impairments meet or equal a medical listing, opinions about residual

functional capacity, or opinions concerning the application of vocational factors.

The undersigned gives little weight to the opinions of Dr. Melissa Ogden, Dr. Lucile Williams, and Dr. Jack Carney, the consultative examiners. These opinions are given little weight because the claimant has not seen these physicians during the relevant period and has not complied with medications prescribed by them since 2004 or 2005.

The undersigned gives significant weight to the opinions of Dr. Kenneth Starkey and Dr. Thomas Bennett. In particular, their opinions are consistent with their findings on examination; the claimant's lack of inpatient psychiatric treatment and consistent mental health treatment; and her extensive activities of daily living.

The undersigned gives little weight to the opinions of Dr. Linda Duke, the State Agency Psychological Consultant. In particular, Dr. Duke's opinions are inconsistent with the record showing the claimant is able to take care of her personal care independently; her extensive activities of daily living; and the lack of inpatient psychiatric hospitalizations or significant mental health treatment in the record.

Deborah Rice, M.S.[,] opined the claimant would maybe be appropriate for jobs where another adult could work closely with her and offer guidance and supervise her. The undersigned considered this opinion; however, it should be noted that Ms. Rice is not an "acceptable medical source" pursuant to 20 CFR § 404.1513(a) and § 416.913(a).

**6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The demands of the claimant's past relevant word exceed[s] the residual functional capacity. The vocational expert, **Leslie Gillespie**, testified that claimant has past relevant work as a **Cashier/Checker** (211.462-014, SVP3, Light). This occupation is characterized in the Dictionary of Occupational (DOT) as light, semi-skilled work. As the claimant's residual functional capacity limits her to unskilled work, she is unable to perform her past relevant work.

**7. The claimant was born on October 28, 1977 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"**

whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

.   .   .

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

| JOB | DOT# | EXERTION LEVEL | #ALA[] | #NAT[] |
|---|---|---|---|---|
| Comm[.] Cleaner | 381.687-014 | Heavy/SVP2 | 300 | 254,000 |
| Laundry Worker II | 361.685-018 | Medium/SVP2 | 3,000 | 199,000 |
| Hand Packager | 920.587-018 | Medium/SVP2 | 9,000 | 661,000 |

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 3, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 13, 14, 15-17, 17, 17-21, 21 & 22 (internal citations omitted; emphasis in original).)

The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

9

**DISCUSSION**

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237;

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those unskilled jobs identified by the vocational expert at the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Rios asserts two reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's decision is not based on substantial evidence as the preponderance of the evidence of record supports a finding of disability based on plaintiff's multiple cognitive impairments and personality disorder; and (2) the ALJ failed to pose the

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

11

vocational expert ("VE") a hypothetical question that encompassed all of plaintiff's impairments and limitations as established by her residual functional capacity ("RFC").

Plaintiff specifically describes her primary issue as follows: "The ALJ's decision is not based on substantial evidence as the preponderance of evidence in the file supports a finding of disability based on the Plaintiff's multiple cognitive impairments and personality disorder." (Doc. 13, at 2.) However, plaintiff's counsel recognizes that the law in the Eleventh Circuit is, as previously explained, that "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence[,]'" *Davison, supra*, 370 Fed. Appx. at 996; therefore, this Court focuses on plaintiff's "true" argument, which is that the ALJ's RFC determination is not supported by substantial evidence because absent therefrom is any limitation on her abilities to handle ordinary work pressures and to work independently (*see* Doc. 13, at 2-3).

The undersigned notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities,

such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also Luterman v. Commissioner of Social Security,* 518 Fed.Appx. 683, 689 (11th Cir. May 2, 2013) ("RFC includes mental abilities, such as the ability to understand, remember, and carry out instructions or respond appropriately to supervision, coworkers, and work pressures."). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple tasks; and short, simple instructions. Further, the claimant can occasionally have casual contact with coworkers and supervisors. In addition, the claimant reported she could occasionally respond appropriately to co-workers and the public.**" (Tr. 15 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other

requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[4]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL

---

[4] In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

[5] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the ALJ accorded significant weight to the opinions of Dr. Kenneth Starkey and Dr. Thomas Bennett (Tr. 21), *see Luterman, supra,* 518 Fed.Appx. at 689 ("In assessing the claimant's RFC, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."), and, as a general matter, "linked" her RFC findings/limitations to evidence in the record, namely, the opinions of Drs. Starkey and Bennett, along with other evidence in the record reflecting a fairly expansive level of activities of daily living, a lack of consistent mental health treatment, and plaintiff "quitting" her full-time work as a cashier/cook in April of 2010 because it was Easter weekend and she wanted to stay at home with her girls. However, this Court need agree with plaintiff that the ALJ did not complete the necessary linkage because she failed to account for the "work pressure" limitations found by Drs. Starkey and Bennett.[6]

---

[6] In addition, while the plaintiff has not convinced the Court that the ALJ did not properly account for Dr. Starkey's use of the modifier "marginal" by her use of the word "occasionally" (*compare* Tr. 15 ("**[T]he claimant can occasionally have casual contact with coworkers and supervisors . . . [and] reported she could occasionally respond appropriately to co-workers and the public.**") *with* Tr. 258 ("Her ability to work with supervisors, co-workers and general public also appears marginal.")), the ALJ's failure to include the noted limitation with respect to working independently (*see id.*) in her RFC determination also inhibits this Court's ability to find proper linkage in this case. In other words, the ALJ should have included in her RFC determination some sort of limitation on Rios' ability to work independently, e.g., (Continued)

15

It is clear in this case that Dr. Starkey specifically noted that plaintiff's "ability to work with pressures common to most every day work settings also appears marginal[,]" (Tr. 258) and that Dr. Bennett noted that "[s]he would probably respond to work pressures with some inappropriate behavior unless she had some assistance in developing better skills." (Tr. 262.) While the undersigned would note that nothing about either doctor's comment denotes a wholesale inability to handle ordinary work pressures, there can also be little question but that, based on the findings of Drs. Starkey and Bennett, plaintiff's ability to respond appropriately to work pressures is limited. Because the ALJ did not reject the "work pressures" findings of these two doctors, though this was certainly an option, *see Wilson v. Colvin*, CA No. 15-0446-C, Doc. 7, Transcript, at 22 ("Great weight is given to the opinion of Dr. Starkey that the claimant would be limited to simple instructions. His assessment is largely consistent with the remainder of the evidence. ***However, no weight can be given to the statement that the claimant would have only marginal ability to handle work pressures.*** This ***limitation*** is not borne out in the remainder of the examination or the remainder of the evidence." (emphasis supplied)), and, instead, accorded significant weight to the entirety of their opinions (Tr. 21), the failure to include a "work pressures" limitation in her RFC determination precludes this Court's ability to find that the ALJ's RFC determination is supported by substantial evidence because, as aforesaid, RFC includes mental abilities

---

the claimant can occasionally work independently. And on remand, of course, the ALJ will have every opportunity to explain how use of "occasional" is equivalent to "marginal," etc.

such as the ability to respond appropriately to work pressures, *see Watkins, supra*, 457 Fed.Appx. at 870 n.5.[7]

Because this Court cannot find that the ALJ's RFC determination is support by substantial evidence, it is obvious that the fifth-step determination in this case, based significantly on expert testimony (*see* Tr. 22), need be reversed and remanded for further consideration not inconsistent with this decision. On remand, the ALJ will be

---

[7] This Court simply cannot agree with the defendant's argument that the ALJ's findings—limiting Rios to simple tasks and short, simple instructions, occasional casual contact with coworkers and supervisors, and the occasional ability to respond appropriately to co-workers and the public—sufficiently account for the "work pressure" opinions of Drs. Starkey and Bennett by limiting claimant to unskilled work conditions that allow her to avoid stressful circumstances and work pressures (*see* Doc. 14, at 6-9), particularly in light of the recognition in *Watkins, supra,* that a claimant's RFC includes the mental abilities to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressures, 457 Fed.Appx. at 870 n.5; *see also* 20 C.F.R. §§ 404.1545(c) & 416.945(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."), and there being no citation to any authority by defendant that an RFC determination like the one made by the ALJ in this case would inherently be understood to "encompass" a limitation with respect to the ability to respond appropriately to work pressures. *See Wilson, supra,* at Tr. 18 & 22 (in a case where the claimant could only perform unskilled work, the ALJ took "pains" to reject a consulting examiner's noted "limitation" of "marginal ability to handle work pressures"); *compare id. with Smith v. Colvin,* 2014 WL 4187668, *2 (N.D. Ala. Aug. 15, 2014) ("The ALJ further found Smith had *moderate limitations in her ability to* work with supervisors and co-workers in interpersonal interaction and discussion; maintain attention to simple tasks; *respond appropriately to work pressures*; make judgments on simple decisions; and adapt to changes in routine work settings." (emphasis supplied)); *Parker v. Colvin,* 972 F.Supp.2d 1267, 1272 (N.D. Ala. 2013) ("After considering the entire record, the ALJ found that Mr. Parker had the residual functional capacity [] to perform 'sedentary work' as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). He further found that Mr. Parker 'has *moderate restriction in the following areas*: understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; dealing with changes in a routine work setting; and *responding to customary work pressures*." (emphasis supplied; internal citation omitted)); and *Jones v. Astrue,* 2013 WL 5428115, *11 (N.D. Ala. Sept. 26, 2013) ("The ALJ determined that the claimant can perform light work, can follow 1-2 step simple instructions, has mild deficits in his ability to respond appropriately to co-workers and accepting supervision, and has *moderate deficits in his ability to respond to work pressures.*" (emphasis supplied)). Stated somewhat differently, the ALJ's RFC determination in this case simply cannot be regarded as sufficiently "accounting for" a mental ability specifically delineated by regulation, *see* 20 C.F.R. §§ 404.1545(c) & 416.945(c), *supra,* and mental examiners' evaluations (*see, e.g.,* Tr. 258 & 262), as central to a determination of whether a claimant has the ability to perform other work in the national economy.

able to pose to the vocational expert ("VE") a hypothetical question that incorporates all of plaintiff's mental limitations, *compare Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) ("'[U]nless there [i]s vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical [and mental] limitations, the decision of the ALJ, based significantly on the expert testimony, would be unsupported by substantial evidence.'") *with Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) ("'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" (citation omitted)), including the recognized limitation that plaintiff can "occasionally respond appropriately to co-workers and the public[]" (Tr. 15), *see Watkins, supra,* 457 Fed.Appx. at 870 n.5 (recognizing that a claimant's RFC includes the mental abilities to respond appropriately to co-workers and supervision). This Court simply cannot find on the record before it that the VE "would have answered in a similar manner" had the ALJ instructed him to consider all of Rios' mental limitations, *see Pendley, supra,* 767 F.2d at 1563, which would include, in addition to those posed to the VE (*see* Tr. 49), that Rios can only occasionally respond appropriately to co-workers and the general public and is limited in her abilities to work independently and in responding appropriately to work pressures.[8] *Cf. Winschel, supra,* 631 F.3d at 1180 & 1181 ("Other circuits have [] rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. But when medical evidence demonstrates that a

---

[8] It will be for the ALJ on remand to determine whether to utilize Dr. Starkey's modifier—marginal—or another modifier—like "occasionally" or "moderate"—based on the credible evidence before her.

claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. In this case, the ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert." (internal citations omitted)). In other words, because the ALJ in this case posed to the VE a hypothetical question that failed to include all of Rios' mental limitations, the VE's testimony is not substantial evidence and cannot support the ALJ's determination that plaintiff could perform unskilled work existing in significant numbers in the national economy. Accordingly, the Commissioner's fifth-step determination is due to be reversed and remanded for further proceedings not inconsistent with this decision.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509

U.S. 292, 112 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

    **DONE** and **ORDERED** this the 8th day of September, 2016.

                                 s/WILLIAM E. CASSADY
                                 **UNITED STATES MAGISTRATE JUDGE**